Jacob Gasman v. Commissioner.
Gasman v. Commissioner
Docket No. 1559-65.
United States Tax Court
T.C. Memo 1967-42; 1967 Tax Ct. Memo LEXIS 218; 26 T.C.M. (CCH) 213; T.C.M. (RIA) 67042; March 7, 1967
Robert S. Lappin, for the petitioner. Raoul E. Paradis, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined the following deficiencies in income tax: Addition to Tax
Income
Sec. 6651(a),
Year
Tax
1954 Code
1959
$590.80
$147.70
1960
496.00
1961
331.43
The questions for decision are (1) whether petitioner is entitled to dependency exemptions for the years 1959 through 1961 for his two children; (2) whether the basis of certain real estate should be increased by reason of two payments aggregating $9,000 made by petitioner *219 to his former wife under a written separation agreement incident to divorce; and (3) whether petitioner is liable for an addition to tax under section 6651(a) of the 1954 Code for late filing of his 1959 return. Findings of Fact Some of the facts have been stipulated, and as stipulated, are incorporated herein by reference. Petitioner, a certified public accountant, is a resident of Brighton, Massachusetts. He filed his income tax returns for the calendar years 1959 through 1961 with the district director of internal revenue for the district of Massachusetts. He filed his 1959 tax return on June 13, 1961. During 1957 petitioner separated from his wife Anna Gasman (also known as Annabel Gasman). Two children were born of their marriage, Martin H. Gasman on July 2, 1944, and Marjorie M. Gasman on December 9, 1948. On June 23, 1958, petitioner and Anna, and their respective trustees, entered into the following written agreement: AGREEMENT made this 23rd day of June, 1958, by and between ANNA GASMAN, also known as Annabel Gasman of Boston, Massachusetts (hereinafter called the "Wife"), and JACOB GASMAN, of Boston, Massachusetts (hereinafter called the "Husband"), and GEORGE *220 L. RABB, of Brookline, Massachusetts, acting as Trustee for said Anna Gasman, and WILLIAM F. DIERKES, of Melrose, Massachusetts, acting as Trustee for said Jacob Gasman. * * *
WHEREAS, the Wife has heretofore filed a libel for divorce in the Probate Court for Suffolk County; and WHEREAS, both husband and wife deem it desirable and expedient that provision be made for the maintenance and support by the husband of the wife and the two minor children born of the marriage, as well as the question of custody of said children, and in the event a decree of divorce is granted the matter of support and alimony for said wife and minor children as well as the custody of said minor children be disposed of, as hereinafter provided; NOW, THEREFORE, in consideration of the premises, the Wife agrees with William F. Dierkes, as Trustee for the husband, and through him with the husband, and the Husband agrees with George L. Rabb, as Trustee for the wife, and through him with the wife and said Dierkes and Rabb severally contract with each other and with each of the parties hereto as follows: - 1. The Husband shall make payments to the Wife for her maintenance and support and as alimony, *221 and for the support of the minor children, in the event of the entry of a decree nisi, as follows: - (a) The lump sum of Seven thousand dollars ($7,000.00) in cash forthwith. (b) An additional sum of Two thousand dollars ($2,000.00) to be evidenced by a promissory note, signed by the Husband, payable in or within fifteen (15) months from the date hereof, to the order of George L. Rabb, as Trustee for the wife, with interest commencing three (3) months from the date hereof, at the rate of five (5) per cent per annum, payable monthly; said note to be secured by a second mortgage to be given by the Husband to said George L. Rabb, as Trustee for the Wife, covering the land and buildings known and numbered 360 Longwood Avenue, Boston, Massachusetts. In the event of a transfer of said property said note shall become immediately due and payable at the option of the holder thereof. (c) The sum of Fifteen dollars ($15.00) per week for the support of the wife, the first weekly payment to be made on July 1, 1958, and the sum of Thirty-five dollars ($35.00) per week for the support of the minor children of said Husband and Wife, the first payment therefor to be made on July 1, 1958. 2. *222 Upon payment of the lump sum of Seven thousand dollars ($7,000.00) above referred to the Wife shall execute a Quitclaim deed of all of her right, title and interest in and to the said land and buildings known as 360 Longwood Avenue, Boston, Massachusetts, to her husband. The Husband agrees to record said deed immediately upon receipt thereof. 3. Custody of the minor children of the Husband and Wife to be in the Wife, the Husband to have the right to visit with said children at reasonable times. * * *
7. In the event that a decree nisi is entered upon the libel of the Wife the provisions of this agreement shall be embodied in the decree so far as the Court granting such decree shall agree to such embodiment. 8. In the event that the Wife does not obtain a decree nisi on or before July 1, 1958, this agreement shall terminate and all obligations of the Husband to make the payments herein provided and of the Wife to execute any instruments as herein provided end, and the parties shall be left to their respective rights as though this agreement shall not have been made. On June 24, 1958, petitioner paid Anna $7,000. On June 26, 1958, Anna executed a quitclaim deed conveying *223 to petitioner her interest in the real property located at 360 Longwood Avenue, Boston, Massachusetts. This property had been acquired by petitioner and Anna as tenants by the entirety on May 4, 1951. Part of the money used in purchasing the property came from savings accumulated by Anna from earnings received by her from the "Navy Yard", and the remainder came from petitioner's funds. During the years 1951 through 1958, Anna rented rooms in the house at 360 Longwood Avenue to various persons. Three-fourths of the property was thus devoted to rental purposes. On June 28, 1958, the Suffolk County Probate Court entered a decree granting Anna a divorce and the custody of the two children. The decree became final on December 28, 1958. The agreement of June 23, 1958 was not incorporated in the decree at that time. However, a nunc pro tunc order subsequently, on December 19, 1962, incorporated that agreement into the divorce decree. On July 5, 1958, petitioner executed a note payable for $2,000 to George L. Rabb, trustee for Anna, secured by a second mortgage on the Longwood Avenue property. On May 4, 1959, petitioner paid Anna $2,024.99, principal and interest, in settlement of the *224 foregoing note. Subsequent to the divorce and during the years 1959, 1960 and 1961 the children, Martin and Marjorie, lived with Anna. During 1959 and until May 1960 they lived in an apartment in Brookline, Massachusetts, and thereafter in a house in Newton, Massachusetts, purchased by Anna together with her sister and her brother-in-law. During the years 1959 through 1961 Anna was employed full time at the "Children's Hospital" and had gross wages for those years of $2,959, $3,245 and $3,656, respectively. During 1960 and 1961 she had additional earnings from part-time employment in the evening at a drive-in theater and in the food concession of the Ted Williams Bowling Lanes in Boston. During the years 1959, 1960 and 1961, petitioner paid Anna the amounts of $2,450, $1,810 and $2,150, respectively, for alimony and child support of which $1,820 in 1959, $1,810 in 1960 and $1,830 in 1961 represented payments for the support of the children in her custody. During 1959 and until July 1, 1960 petitioner visited the two children every Sunday. On each such occasion he took them out to dinner and various places of entertainment. When they returned home he gave each of them a $1 weekly *225 allowance. The cost of the dinner was about $3 per person. Beginning about July 1, 1960, Martin ceased going out with petitioner completely. During the remainder of 1960 and all of 1961 Martin did not go to dinner with petitioner or receive any allowance or gifts from him. However, Marjorie continued to go to dinner with petitioner on Sundays during that period and he gave her an allowance of $2 a week. During the years 1959, 1960 and 1961 petitioner gave Marjorie a gift on her birthday, and in 1959 he gave Martin a birthday gift. In his income tax returns for the years 1959, 1960 and 1961 petitioner claimed dependency exemptions of $600 for each of his children, which the Commissioner disallowed. The various items of support for the children furnished by petitioner's former wife during the tax years included rent or housing, utilities, telephone, food, clothing, dry cleaning and laundry, summer camp, allowances, medical expenses, piano and religious instruction, and a variety of other expenses. The total amounts expended by petitioner for the support of the children were as follows: $1,126 for each child in 1959; $1,176 for Marjorie and $1,055 for Martin in 1960; and $1,226 for *226 Marjorie and $915 for Martin in 1961. He provided more than one-half of Marjorie's support for 1959 but less than one-half of Martin's support for 1959; he provided more than one-half the support of both children for 1960; and he provided more than one-half of Marjorie's support for 1961, but less than one-half of Martin's support for 1961. Petitioner's failure to file his income tax return for the year 1959 within the time prescribed in section 6072 of the Internal Revenue Code of 1954 was not due to reasonable cause. Opinion RAUM, Judge: 1. Dependency exemptions. Petitioner's right to the dependency exemptions claimed by him turns entirely upon a question of fact: did he furnish more than one-half the support for each child? On the evidence and stipulated facts it was comparatively easy to make a reasonably accurate finding as to the amounts expended by petitioner for each child during each of the tax years. However, the matter was far less susceptible of precise determination in respect of the items of support furnished by the former wife, notwithstanding detailed evidence of a wide variety of expenditures, many of them supported by cancelled checks, *227 vouchers and the like. Some of her alleged expenditures were based on estimates that appeared to be questionable in the light of other evidence of record. We think it would serve no useful purpose to attempt to make any precise finding as to her expenditures for each child during each of the years, for such finding would give a misleading impression of mathematical accuracy in a case where the issue on the evidence appears to be a fairly close one. However, based upon all the evidence, we have been able to make a finding as to which spouse furnished more than one-half the support for each child as to each year in issue. Accordingly, using our best judgment on the entire record, after giving proper weight to the evidence relating to the wife's expenditures, we have made a finding that petitioner furnished more than one-half of Marjorie's support for 1959, more than one-half the support of both children for 1960, and more than one-half of Marjorie's support for 1961. He is thus entitled to one dependency exemption for 1959, two for 1960, and one for 1961. 2. Adjustment to basis of property. In 1951 petitioner and his wife purchased a house on Longwood Avenue, Boston. Both contributed *228 to the purchase price and they took title as tenants by the entirety. They occupied one-fourth of the house and used the remainder for rental purposes. Pursuant to the settlement agreement of June 23, 1958, the wife executed a quitclaim deed several days later conveying her interest in the property to petitioner. It appears that he sold the property in 1959, and a question is raised whether there should be an upward revision of his basis therein by reason of consideration of $9,000 paid by him to his wife allegedly for her one-half interest. Such upward revision would reduce the amount of gain on sale realized by petitioner and would also increase the amount of depreciation deductible by him prior to sale. That petitioner paid $9,000 to his wife under the settlement agreement, $7,000 in cash and $2,000 on a note executed by him, is undisputed. The issue is whether that amount was paid for her interest in the property, as contended by petitioner, or whether it was paid as alimony for her maintenance and support, as contended by the Government. Cf. Jerome A. Blate, 34 T.C. 121. There are indications in the record pointing both ways. On the one hand, the settlement agreement *229 provided for these two payments as well as for the undisputed alimony of $15 a week in three subparagraphs that were introduced by explicit language characterizing the payments in all three subparagraphs as "maintenance and support and as alimony." On the other hand, the agreement itself required the wife to execute her quitclaim deed only "[upon] payment of the lump sum of Seven thousand dollars ($7,000.00) above referred to", and the agreement further required that the remaining $2,000 be reflected in a 15-month interest bearing note to be secured by a second mortgage on the property. Taking into account the fact that the wife appears to have been a person of very modest means it seems highly unlikely to us that she would have relinquished her one-half interest in the property without consideration. The situation here is to be sharply differentiated from the one before us in the Blate case, where the wife not only was interested in keeping the control of stock in a family corporation in the hands of her husband for the future benefit of their children, but appeared to be willing to make almost any concession in order to obtain the divorce so that she could marry someone else. We *230 found on the special facts in that case that the wife gave up her interest in the stock without any separate consideration. It is our best judgment in the present case that petitioner paid $9,000 for his wife's interest in the property and not as alimony. We are reinforced in this conclusion by petitioner's testimony relating to the pre-settlement negotiations in which his earlier offer of $5,000 for her interest in the property was raised to $7,000, and finally to $9,000 with the last $2,000 as a second mortgage obligation on the property. The wife's testimony in respect of this matter did not ring true to us. Accordingly, petitioner is entitled to an upward revision of his basis in the property. We assume that the effect of such adjustment in basis upon the computation of gain on sale and the depreciation allowance can be agreed to by the parties in connection with the decision to be entered under Rule 50. 3. Failure to file timely return. The remaining question is whether the Commissioner erred in determining that petitioner is liable for an addition to tax of 25 percent under section 6651(a) of the 1954 Code for failure to file his 1959 return within the time prescribed in *231 section 6072. That return, which should have been filed on or before April 15, 1960, was not filed until June 13, 1961, nearly 14 months after the due date. Section 6651(a) provides that petitioner is liable for an addition to tax unless he shows that the late filing of his return was due to reasonable cause. He testified that as a certified public accountant he was aware of his obligation to file a return for 1959; that at the time he was supposed to file it he was upset and under severe emotional strain as a result of the divorce and separation from his children; and that his records were put away in boxes "and some how or other I just was unable to file the return on time." The return which he eventually filed for 1959 shows that he engaged in business as a certified public accountant during that year and had gross receipts from that business amounting to $7,930. In his 1960 return he reported gross business receipts of $8,327.50. The burden of proof in respect of this issue is upon petitioner, and we are not convinced on this record that his delay in filing that return was due to "reasonable cause". We hold that the Commissioner did not err in determining that he was liable for *232 a 25 percent addition to tax under section 6651(a). Decision will be entered under Rule 50.